

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* Blue Zuum phone Seizure No. 2022250400080502-001 ("Target Device 2") | ) ) ) ) ) ) Case No. '22 MJ0736 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Nicholas Sisto, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date: February 25, 2022

*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major, United States Magistrate Judge

*Printed name and title*

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Blue Zuum phone
> Seizure No. 2022250400080502-001
> ("Target Device 2")

Target Device 2 is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Ave, San Diego, CA, 92154.

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2022, up to and including February 25, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT

I, Special Agent Nicholas Sisto, being duly sworn, hereby state as follows:

## INTRODUCTION

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

White Samsung Galaxy S10 phone

Seizure No. 2022250400080501-001

("Target Device 1")

Blue Zuum phone

Seizure No. 2022250400080502-001

("Target Device 2")

Black UMX phone

Seizure No. 2022250400080502-001

("Target Device 3")

as further described in Attachment A-1, A-2, and A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Sarah Aleeza SARTORI ("SARTORI") and Peter ECHEVERRIA ("ECHEVERRIA") for importing approximately 27.18 kgs of methamphetamine from Mexico into the United States.  The Target Devices are currently in the custody of Homeland Security Investigations (HSI) and located at 2055 Sanyo Ave, San Diego, CA, 92154.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3.      I am presently employed as a duly sworn Special Agent (SA) with United States Homeland Security Investigations (HSI), where I have worked since 2020. During my tenure as a Special Agent, I have successfully completed both the Criminal Investigator Training Program (CITP) and the HSI Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I am presently assigned to the HSI San Diego Special Agent in Charge (SAC) office and have been since December of 2021.

4.      Prior to my tenure as a Special Agent, between 2014 and 2020, I worked as a Deputy Sheriff in San Diego County, California, with my final two (2) years assigned to a Sheriff's Detective position with the Sheriff's Detentions Investigations Unit (DIU). Prior to becoming a Deputy Sheriff, I worked as a Certified Emergency Medical Technician for Los Angeles County Emergency Medical Services where I responded to various medical emergencies throughout Los Angeles and Orange Counties. I am still certified as a California Emergency Medical Technician and retain training and experience in the recognition and treatment of medical and trauma emergencies, including those which are related to controlled substances, alcohol, or mental health emergencies. Between 2011 and 2021, I also served as a Hospital Corpsman in the United States Navy Reserve, achieving the pay grade of E-5. As a Corpsman, I provided emergency and non-emergency medical care to military service members and civilians in a wide variety of conditions and locations. Finally, I have a bachelor's degree in International Politics from the Pennsylvania State University.

5.      Throughout my various forms of employment, I have led and assisted in the investigation of hundreds of basic and complex criminal investigations. I have also conducted various forms of physical and electronic surveillance, applied for and executed

search and arrest warrants, forensically examined electronic devices, conducted various types of interviews, testified in various types of judicial proceedings, and developed and instructed law enforcement training courses of varying topics.

6. Additionally, throughout my various forms of employment, I have attended and instructed multiple formal and informal instructional courses on narcotics investigations including trainings in the identification and handling of suspected narcotics and recognition of persons under the influence of controlled substances and alcohol. I have participated in hundreds of investigations, arrests, and emergencies directly involving multiple types of controlled substances including but not limited to methamphetamine, cocaine, heroin, fentanyl, salvia, bath salts, PCP, MDMA / Ecstasy, Xanax, marijuana, marijuana wax, jail-made alcohol, commercially produced ethyl alcohol, and other illicit substances. I have also assisted in the investigation of dozens of deaths, including those attributed directly to controlled substance abuse, such as opiate overdoses.

7. Finally, through my own personal experiences, or by speaking with drug users, arrestees, informants, and other law enforcement officers, I have become familiar with the various ways controlled substances are packaged, smuggled, transported, consumed, marketed, sold, and purchased; their various forms of paraphernalia, and their commonly associated slang and jargon.

8. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding

arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.  On February 24, 2022, at approximately 1115 hours, Sarah Aleeza SARTORI, a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry (POE) in vehicle lane #23. SARTORI was the driver, and registered owner of a gray Honda Civic ("SUBJECT VEHICLE") bearing CA license plate "6ZLA395." SARTORI was accompanied by her boyfriend Peter ECHEVERRIA in the front passenger seat.

11.  A Customs and Border Protection Officer (CBPO) was conducting primary inspections and received two negative Customs declarations from SARTORI. SARTORI stated she was crossing the border to return to Los Angeles, California.

12.  During their crossing, a CBPO conducting pre-primary inspections and his human and narcotics detection dog alerted to a trained odor of narcotics on the SUBJECT VEHICLE. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the body of the vehicle.

13.  An additional inspection of the vehicle resulted in the discovery of twenty-six (26) total packages containing methamphetamine concealed in the body of the SUBJECT VEHICLE. The total approximate weight of the packages was 27.18 kgs.

14.  Based on the above, both SARTORI and ECHEVERRIA were placed under arrest at approximately 1312 and 1315 hours respectively.

15.  During post-Miranda interviews, both SARTORI and ECHEVERRIA claimed to not be aware of the drugs concealed within the body of the vehicle. However, SARTORI did admit to knowing that ECHEVERRIA had taken her vehicle for hours

to conduct "business" while they were in Mexico. SARTORI claimed she had a "gut feeling" something "was up" with her car, but when she asked ECHEVERRIA, he told her there was not. ECHEVERRIA admitted to taking SARTORI's vehicle to visit an ex-girlfriend, and claimed he left it at a shop for a few hours to change a flat tire. ECHEVERRIA ultimately claimed to have no knowledge of the drugs found in the SUBJECT VEHICLE.

16.     Both SARTORI and ECHEVERRIA were arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

17.     During the initial investigation by CBPO's, target device 1 was identified as being in the possession of SARTORI, while target devices 2 and 3 were identified as belonging to ECHEVERRIA. This was confirmed during a post-Miranda interview where SARTORI admitted to ownership of target device 1, and provided the password to the device, and ECHEVERRIA admitted to ownership of target devices 2 and 3 and provided the password to target device 3.

18.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that the

Defendants were using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on January 1, 2022, up to and including February 25, 2022.

**METHODOLOGY**

19.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards

inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

///
///
///
///
///
///
///
///
///
///
///

# CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendants' violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1, A-2, and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Nicholas Sisto
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 25th day of February, 2022.

Honorable Barbara L. Major
United States Magistrate Judge